```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: OCT 2 2 2013
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

SMARTMATIC USA CORP., et al.,

                Plaintiffs,

   -v-

DOMINION VOTING SYSTEMS CORP.
and DOMINION VOTING SYSTEMS, INC.,

                Defendants.
------------------------------------------------------------ X

13 Civ. 5349 (KBF)

MEMORANDUM
DECISION & ORDER

KATHERINE B. FORREST, District Judge:

    This Decision resolves three competing motions. Defendants Dominion Voting Systems Corporation and Dominion Voting Systems, Inc. have moved to transfer venue and to dismiss Plaintiffs' Complaint. (ECF Nos. 3, 10.) Plaintiffs Smartmatic USA Corporation, Smartmatic International Corporation, and Smartmatic Services Corporation have moved to remand the case to state court. (ECF No. 25.) For the following reasons, Plaintiff's motion to remand is DENIED, Defendants' motion to transfer is GRANTED, and Defendant's motion to dismiss is HELD IN ABEYANCE to be decided by the District of Colorado.

## I. BACKGROUND

### A. Factual Background

    The following facts are as set forth in Plaintiffs' Complaint.[1]

---

[1] "When considering a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff." Weiss v. Hager, No. 11 Civ. 2740 (VB), 2011 WL 6425542, at *2 (S.D.N.Y. Dec. 19, 2011). The same is true of a motion to transfer venue. See Caremark Therapeutic Servs. v. Leavitt, 405 F. Supp. 2d 454, 457 (S.D.N.Y. 2005). Defendants accept these facts as true for purposes of the pending motions. (Defs.'

Plaintiffs seek to avoid and set aside as fraudulent two transfers made by Sequoia, a company that provided electronic voting systems, election technologies, and related support services to state and local governments. (Compl. ¶ 11, ECF No. 1.) Plaintiff Smartmatic USA's predecessor in interest owned Sequoia until 2007; all three Plaintiffs are creditors of Sequoia. (Compl. ¶¶ 12–14.) Specifically, Sequoia is indebted to Plaintiff Smartmatic USA in the amount of $1,314,636; to Smartmatic International in an amount between $45,342.09 and $1,110,775.09; and to Smartmatic Services in an amount not less than $199,997.03. (Id.)

1. Defendants' Purchase of Assets from Sequoia

In 2009, with Sequoia experiencing financial difficulties, its management began investigating potential purchasers or investors. (Compl. ¶ 15.) In April 2009, Sequoia approached Defendants about a possible transaction involving Sequoia's contract with the State of New York for certain voting systems and devices. (Compl. ¶¶ 16–17.) On July 15, 2009, Sequoia and Defendants entered into an Asset Purchase Agreement by which Defendants acquired from Sequoia both the New York contract and Sequoia's rights under a related lease for $2.366 million in cash plus contingent payments. (Id.) At the time of that transfer, many New York counties had already entered into individual contracts and/or placed orders with Sequoia under that contract, and Sequoia had started to receive significant revenue under the contract. (Compl. ¶ 18.) The expected profit to Sequoia under the contract would have been as high as $30 to $40 million for the sale of voting

---

Mem. of L. in Supp. Mot. to Dismiss ("Defs.' Mot. to Dismiss") 3 n.5, ECF No. 11; Defs.' Mem. of L. in Supp. Mot. to Transfer Venue ("Defs.' Mot. to Transfer Venue") 3, ECF No. 4.)

2

equipment, plus substantial additional revenue for warranty and support services and ancillary products. (Compl. ¶ 19.) Sequoia did not market the contract to any other party or "shop" Defendants' offer to any other party. (Compl. ¶¶ 20–22.) When it made the 2009 transfer, Sequoia was insolvent, with assets of approximately $56.3 million and liabilities of approximately $73.3 million. (Compl. ¶ 23.)

The influx of cash from the 2009 transfer failed to resolve Sequoia's financial difficulties. (Compl. ¶ 24.) Sequoia faced continued cash flow problems and began investigating the possibility of locating a potential purchaser. (Id.) In January 2010, Sequoia and Defendants began discussing a larger transaction. (Compl. ¶¶ 25–26.) In response to Sequoia's proposals, Defendants offered to purchase substantially all of Sequoia's remaining assets in March 2010. (Compl. ¶ 27.) On June 4, 2010, Defendants and Sequoia entered into an Asset Purchase Agreement, whereby Defendants purchased from Sequoia substantially all of its remaining assets for the sum of $7.5 million, consisting of approximately $3 million plus up to $4.5 million in potential contingent payments. (Compl. ¶ 28.) Defendants also entered into an employment agreement with Sequoia's chief executive officer, Jack Blaine, formerly one of Sequoia's principal negotiators, under which Blaine became Defendants' employee. (Compl. ¶¶ 25–26, 29.)

While it negotiated the 2010 agreement, Sequoia received at least one competing offer from a prominent company in the elections industry. (Compl. ¶ 30.) Sequoia did not pursue competing offers. (Id.)

3

Plaintiffs assert that these asset transfers, made for tens of millions of dollars below their reasonably equivalent or fair value, and made when Sequoia was insolvent, are constructively fraudulent as to Smartmatic as a creditor of Sequoia. (Mem. of L. in Supp. Pls.' Mot. to Remand ("Pls.' Mot. to Remand") 6, ECF No. 26.)

2. The SVS Bankruptcy

On June 8, 2010, SVS—Sequoia's parent and sole shareholder—filed a voluntary petition under Chapter 11 of the Bankruptcy Code. See In re SVS Holdings, Inc., Case No. 10-24238 (Bankr. D. Colo.). In October 2012, the Colorado Bankruptcy Court converted the SVS bankruptcy case into a Chapter 7 proceeding and appointed Tom H. Connolly as the SVS Trustee. (Greene Decl. Exs. D (Order on Mot. to Convert), E (Notice of App't of Interim Trustee), ECF No. 31.)

On December 7, 2012, the SVS Trustee commenced an action, as an adversary proceeding within the SVS bankruptcy case, against Defendants. (Greene Decl. Ex. F (Bankruptcy Compl.).) In his complaint, the Trustee seeks the substantive consolidation of SVS and non-debtor Sequoia, and further seeks the avoidance of Sequoia's fraudulent transfers, recovery of their value, and disallowance of Defendants' claims in the bankruptcy proceeding on the basis that Defendants fraudulently underpaid Sequoia when they bought those assets in 2009 or 2010. (Id. at ¶¶ 35–37; 45–91.)

On June 19, 2013, Defendants moved to dismiss the SVS Trustee's Colorado action on the grounds that "there is no legal basis for substantive consolidation of SVS with Sequoia." (Greene Decl. Ex. G (Mot. to Dismiss), at 8.)

4

B. Procedural Background

Plaintiffs originally filed this action in the Supreme Court of the State of New York on June 28, 2013. (ECF No. 1.) In their Complaint, Plaintiffs assert fraudulent transfer claims against Defendants under New York, Colorado, and Delaware fraudulent transfer laws. Defendants removed the Complaint to this Court on July 31, 2013. (ECF No. 1.)

On August 1, 2013, Defendants moved to transfer venue. (ECF No. 3.) Plaintiffs opposed that motion on August 30, 2013. (ECF No. 29.) Defendants filed a reply in further support of their motion to transfer venue on September 9, 2013. (ECF No. 32.)

On August 10, 2013, Defendants moved to dismiss Plaintiffs' Complaint or, in the alternative, to stay this action. (ECF No. 10.) Plaintiffs opposed that motion on September 24, 2013. (ECF No. 34.) Defendants filed a reply in further support of their motion to dismiss on October 4, 2013. (ECF No. 35.)

On August 30, 2013, Plaintiffs moved to remand to state court and for abstention. (ECF No. 25.) Defendants opposed that motion on September 9, 2013. (ECF No. 32.)

## II. STANDARDS OF REVIEW

A. Motion to Remand

Removal of an action filed in state court to federal court is proper in "any civil action . . . of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). The district courts have "original but not

5

exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). In general, the proponent of federal subject matter jurisdiction has the burden of establishing that jurisdiction applies to a removed action. See, e.g., Blockbuster, Inc. v. Galeno, 472 F.3d 53, 56–58 (2d Cir. 2006). The subject matter "jurisdiction of the court depends upon the state of things at the time of the action brought." Grupo Dataflux v. Atlas Global Grp., L.P., 541 U.S. 567, 570 (2004) (citation and quotation marks omitted). "[O]ut of respect for the limited jurisdiction of the federal courts and the rights of the states, [the Court] must resolve any doubts against removability." In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 488 F.3d 112, 124 (2d Cir. 2007) (alteration, citations, and internal quotation marks omitted).

B. Motion to Transfer

Pursuant to 28 U.S.C. § 1412, a case or proceeding under Title 11 may be transferred to another district "in the interest of justice or for the convenience of the parties." In adjudicating motions for transfer, courts should consider the following factors: "(1) the plaintiff's choice of forum; (2) the locus of the operative facts; (3) the convenience and relative means of the parties; (4) the convenience of witnesses; (5) the availability of process to compel the attendance of witnesses; (6) the location of physical evidence, including documents; (7) the relative familiarity of the courts with the applicable law; and (8) the interests of justice, including the interests of trial efficiency." Goggins v. Alliance Capital Mgmt., L.P., 279 F. Supp. 2d 228, 232 (S.D.N.Y. 2003).

6

"The decision to transfer venue is within the discretion of the court based on an individualized, case-by-case consideration of convenience and fairness." In re Northwest Airlines Corp., 384 B.R. 51, 60 (S.D.N.Y. 2008) (internal quotations omitted). However, "the district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy." In re Manville Forest Prods. Corp., 896 F.2d 1384, 1391 (2d Cir. 1990).

### III. DISCUSSION

#### A. Sequence of Decision

Both parties argue that this Court should defer adjudication of Defendant's motion to transfer venue until after adjudication of Plaintiff's motion to remand. (Pls.' Mem. of L. in Opp. to Defs.' Mot. to Transfer Venue ("Pls.' Opp. Transfer Venue") 2, ECF No. 29; Defs.' Mem. of L. in Opp. to Pls.' Mot. to Remand ("Defs.' Opp. Remand") 2, ECF No. 32.)

This Court agrees that it must decide Plaintiffs' motion to remand before deciding Defendants' motion to transfer venue or Defendants' motion to dismiss. "Because the removal statute only allows removal of actions within the Court's original jurisdiction, and because fundamental principles of American jurisprudence forbid the Court from acting in the absence of subject matter jurisdiction, . . . plaintiffs' [motion to remand] must be examined before any other matter." Bank of N.Y. v. Bank of Am., 861 F. Supp. 225, 227 (S.D.N.Y. 1994) (internal citations omitted); see also Lothian Cassidy, LLC v. Lothian Exploration & Dev. II, L.P., 487

7

B.R. 158 (S.D.N.Y. 2013) (addressing a motion to remand before a motion to transfer venue); Weiss v. Hager, No. 11 Civ. 2740 (VB), 2011 WL 6425542, at *2 (S.D.N.Y. Dec. 19, 2011) (addressing a motion to remand before a motion to dismiss).

B. Motion to Remand

The Court turns first to Plaintiffs' motion to remand. For the following reasons, that motion is DENIED.

Defendants claim federal subject matter jurisdiction under 11 U.S.C. § 1334(b), which grants the district courts "original . . . jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11" of the Bankruptcy Code. There are three possible bases for federal subject matter jurisdiction. First, "arising under" jurisdiction exists where a plaintiff's "causes of action [are] created by Title 11." Lothian Cassidy, 487 B.R. at 161–62. Second, "arising in" jurisdiction "covers claims that are not based on any right expressly created by [T]itle 11, but nevertheless, would have no existence outside of the bankruptcy." Baker v. Simpson, 613 F.3d 346, 351 (2d Cir. 2010) (alteration in original) (quoting In re Wood, 825 F.2d 90, 97 (5th Cir. 1997)) (internal quotation marks omitted). Third, a court has jurisdiction over a claim that is "related to" a bankruptcy case if the outcome of such a claim "might have any 'conceivable effect' on the bankruptcy estate." In re Cuyahoga Equip. Corp., 980 F.2d 110, 114 (2d Cir. 1992). Defendants here argue that both "arising in" and "related to" forms of

bankruptcy jurisdiction exist over the New York action, while Plaintiffs deny both. (See Defs.' Opp. Remand 2–8; Pls.' Mot to Remand 15–22.)

The Court need not decide whether "arising in" jurisdiction exists here, because the New York action is in any event "related to" the Colorado bankruptcy proceeding. "Certainty, or even likelihood, is not required" to satisfy the "conceivable effect" test; "jurisdiction will exist so long as it is possible that the proceeding may affect the debtor's rights or the administration of the estate." Winstar Holdings, LLC v. Blackstone Grp. L.P., No. 07 Civ. 4634 (GEL), 2007 WL 4323003, at *1 n.1 (S.D.N.Y. Dec. 10, 2007) (emphasis added) (citations and internal quotation marks omitted). The Court has jurisdiction as long as "the outcome could alter the debtor's rights, liabilities, options, freedom of action" or impact "the handling of the administration of the bankruptcy estate." In re WorldCom, Inc. Secs. Litig., 293 B.R. 308, 317 (S.D.N.Y. 2003) (emphasis added).

Here, the outcome of this action could have a "conceivable effect" on the SVS bankruptcy estate, because it could affect the amount of assets available for distribution to creditors. Plaintiffs are in direct competition for a limited pool of funds. (Compl. ¶¶ 25–27.) Any recovery by Plaintiffs as Sequoia's creditors could reduce a recovery by the SVS Trustee from SVS, Sequoia's owner, in the Colorado bankruptcy proceeding. That effect—"altering the amount of property available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors"—is a typical manifestation of the "conceivable effect" doctrine. Allstate Ins. Co. v. Credit Suisse Secs. (USA) LLC, No. 11 Civ. 2232

9

(NRB), 2011 WL 4965150, at *3 (S.D.N.Y. Oct. 19, 2011) (internal quotation marks omitted); see also General Elec. Capital Corp. v. Pro-Fac Coop., Inc., No. 01 Civ. 10215 (LTS) (JCF), 2002 WL 1300054, at *2 (S.D.N.Y. June 11, 2002) (explaining that a "conceivable effect" exists "where the dispute would affect how much property is available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors") (internal quotation marks omitted).

Plaintiffs argue that the existence of "related to" jurisdiction here hinges on the "remote and speculative" possibility that their recovery might indirectly affect the amount the SVS Trustee might obtain. Sealink Funding Ltd. v. Bear Stearns & Co., No. 12 Civ. 1397 (LTS), 2012 WL 4794450, at *3 (S.D.N.Y. Oct. 9, 2012). However, the cases upon which Plaintiffs rely refer to situations involving time-barred claims, where the possibility of affecting the bankruptcy proceeding was indeed remote. See id.; see also Allstate, 2011 WL 4965150, at *5. Furthermore, despite Plaintiffs' allusions to the contrary (Pls.' Mot. to Remand 20), Defendants need not show that they are insolvent or unable to pay the sum of both potential judgments in order to demonstrate the existence of "related to" jurisdiction through a "conceivable effect" on the bankruptcy proceeding. It is enough that the amounts paid to satisfy a judgment in the New York action could reduce, dollar-for-dollar, the amount available for distribution to SVS creditors in the bankruptcy proceeding.[2]

---

[2] Plaintiffs also argue that the Court must abstain from exercising its jurisdiction, whether in the form of mandatory abstention under 28 U.S.C. § 1334(c)(2) or permissive abstention under 28 U.S.C. § 1334(c)(1). (Pls.' Mot. to Remand 22–25.) Colorado is the proper venue for that motion, as it is the

10

For these reasons, the Court has subject matter jurisdiction over this action. Accordingly, Plaintiffs' motion to remand is DENIED.

C. Motion to Transfer

The Court next turns to Defendants' motion to transfer venue of the New York action to the District of Colorado. In this case, because there are "strong considerations favoring transfer," the Court resolves the transfer motion before the motion to dismiss. Alexander & Alexander, Inc. v. Donald F. Muldoon & Co., 685 F. Supp. 346, 348 (S.D.N.Y. 1988). For the following reasons, that motion is GRANTED.

A transfer of venue to Colorado is presumptively appropriate under the standard set forth in Manville, because the "district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy." 896 F.2d at 1391. As in Manville, the SVS bankruptcy case in Colorado is intimately related to the New York action, such that transfer is presumptively proper. For example, if the Colorado court determines that the SVS Trustee has standing to bring the claims asserted in that action, that standing will be exclusive of other parties' rights to bring similar claims, like Plaintiffs in the New York action. See In re Berg, 376 B.R. 303, 311 (Bankr. D. Kan. 2007) (recognizing a trustee's "exclusive right to pursue fraudulent conveyance").

---

proper venue for this litigation as a whole, for reasons explained infra. The Court therefore holds Plaintiffs' motion for abstention in abeyance to be decided by the District of Colorado.

11

Moreover, the eight factors to be considered under 28 U.S.C. § 1412—most obviously the "interests of justice, including the interests of trial efficiency"—militate in favor of transferring the New York action to Colorado. The Colorado federal courts are already presiding over a nearly identical set of claims within the bankruptcy proceeding there. "The single most significant circumstance favoring transfer in this action is the existence" of a related action in another district. Goggins, 279 F. Supp. 2d at 234. This Court has already determined that Plaintiffs' case is "related to" a bankruptcy proceeding, which is why it was removed to federal court in the first place, and that bankruptcy proceeding is pending in the District of Colorado. See Lothian Cassidy LLC v. Ransom, 428 B.R. 555, 562 (E.D.N.Y. 2010). "It would be a waste of resources—for both the parties and the judiciary—to have the same issues litigated" in both Colorado and New York courts. Mastr Asset Backed Secs. Trust 2007-WMC1, ex rel. U.S. Bank Nat'l Ass'n v. WMC Mortgage LLC, 880 F. Supp. 2d 418, 424 (S.D.N.Y. 2012).

Analysis of the other seven factors also favors transfer here. For example, Colorado is the principal place of business for both Sequoia and Defendants. (Compl. ¶ 7, 10.) Consideration of the convenience of the parties, the convenience of witnesses, and the location of physical evidence thus confirms that Colorado is the correct venue for this case. The fact that Defendants purchased a contract with the state of New York from Sequoia does not overcome the many factors favoring transfer of venue, particularly because that contract constituted only one part of the 2009 and 2010 Asset Purchase Agreements.

No further analysis is required here, as Plaintiffs have not truly opposed Defendants' motion. Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Transfer Venue made no substantive arguments against the transfer of their claim and contested none of Defendants' assertions related to that motion. (See generally Pls.' Opp. Transfer Venue.) Rather, Plaintiffs argued that the Court should decide Plaintiffs' motion to remand before considering the motion to transfer and, having granted Plaintiffs' motion, then deny Defendants' motion as moot. (Id.) However, because the Court denied rather than granted Plaintiffs' motion to remand, Defendants' motion to transfer is not moot.

The District of Colorado is the proper venue for the New York action. Defendants' motion to transfer venue is therefore GRANTED.

D. Motion to Dismiss

Defendants have also moved to dismiss Plaintiffs' Complaint on numerous grounds, including, inter alia, Plaintiffs' lack of standing and their failure to plead facts supporting their claim. (Defs.' Mem. of L. in Supp. Mot. to Dismiss ("Defs.' Mot. to Dismiss") 2.)

Colorado is the proper venue for adjudication of Defendants' motion to dismiss, because resolution of the motion will require analysis of the same facts and claims underlying the SVS bankruptcy proceeding. For example, Defendants' argument that Plaintiffs lack standing to bring non-bankruptcy claims hinges on whether the SVS Trustee succeeds on his theory that SVS and Sequoia's assets and liabilities should be substantively consolidated. (See Defs.' Mot. to Dismiss 8–9.)

13

Because the issues underlying this action and the SVS bankruptcy proceeding are inextricably intertwined, the Colorado courts should decide Defendant's motion.

Accordingly, Defendant's motion to dismiss is HELD IN ABEYANCE to be decided by the District of Colorado. See Sibley v Sibley, 681 F. Supp. 2d 38, 41 (D.D.C. 2010); Consumers Gas & Oil, Inc. v. Farmland Indus., Inc., 815 F. Supp. 1403, 1414 (D. Colo. 1992).

## IV. CONCLUSION

For these reasons, Plaintiffs' Motion to Remand is DENIED; Plaintiffs' Motion to Transfer Venue is GRANTED; and Defendants' Motion to Dismiss is HELD IN ABEYANCE.

The Clerk of Court is directed to terminate the motions at ECF Nos. 3 and 25 and to transfer this action to the District of Colorado.

The initial pretrial conference scheduled for Friday, October 25, 2013, at 12:00 p.m. is adjourned.

SO ORDERED.

Dated:   New York, New York
         October 22, 2013

_____
KATHERINE B. FORREST
United States District Judge

14